# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SAKE TN, LLC, and** | ) | |
| **SEANACHE HOMES, INC., for** | ) | |
| **themselves and all others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No.** 3:21-cv-00108 |
| | ) | |
| **TREY CAIN, KALI CAIN, CAIN &** | ) | |
| **ASSOCIATES, PLLC, TENNESSEE** | ) | **JURY DEMANDED** |
| **TITLE & ESCROW AFFILIATES,** | ) | |
| **LLC, KNOX VALLEY PARTNERS,** | ) | |
| **LLC, MORRIS FAMILY** | ) | |
| **HOLDINGS, LLC, PATRICK MOSS,** | ) | |
| **IRA INNOVATIONS, LLC, MARY** | ) | |
| **M. WESTER, individually and as** | ) | |
| **Trustee of the Mary M. Wester** | ) | |
| **Revocable Trust, MIKE TODD, and** | ) | |
| **ALYCIA WHITE as Executrix** | ) | |
| **of the estate of William J. Gulas,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## SECOND AMENDED COMPLAINT
_____

The Plaintiffs, Seanache Homes, Inc., and Sake TN, LLC, by and through counsel,

and with written consent of the parties, hereby submit this Second Amended Complaint

against the Defendants as follows:

# I. PARTIES, JURISDICTION & VENUE

1.    Plaintiff, Sake TN, LLC ("Sake"), is a Tennessee limited liability company. Sake is the assignee of Seanache Homes, Inc., who assigned some of the claims herein to Sake pursuant to an Assignment Agreement.

2.    Plaintiff, Seanache Homes, Inc. ("Seanache"), is a Nevada corporation that is authorized to conduct business in the State of Tennessee and has its principal office in Williamson County, Tennessee.

3.    Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated pursuant to Fed R. Civ. P. 23.

4.    Defendant, Trey Cain, is a licensed Tennessee attorney whose principal office is located in Williamson County, Tennessee.

5.    Defendant, Kali Cain, is a citizen and resident of Williamson County, Tennessee.

6.    Defendant, Cain & Associates, PLLC ("Cain & Associates") is a Tennessee professional limited liability company, whose principal office is located in Williamson County, Tennessee.

7.    Defendant, Tennessee Title & Escrow Affiliates, LLC ("Tennessee Title"), is a Tennessee limited liability company with its principal office located in Williamson County, Tennessee.

8.    Defendant, Knox Valley Partners, LLC ("Knox Valley"), is a Tennessee limited liability company with its principal office located in Williamson County, Tennessee.

9.     Defendant, Morris Family Holdings, LLC ("Morris Family Holdings") is a Wyoming close limited liability company that is authorized to conduct business in the State of Tennessee, and whose principal office is located in Williamson County, Tennessee

10.     Defendant, IRA Innovations, LLC ("IRA Innovations"), is an Alabama limited liability company that is authorized to conduct business in the State of Tennessee, and whose principal office is located in Hoover, Alabama.

11.     On information and belief, Defendant, Patrick Moss, is a citizen and resident of Williamson County, Tennessee, and on information and belief, is the person that owns Patrick Moss IRA, a self-directed Individual Retirement Account.

12.     Defendant, Mary M. Wester, is a citizen and resident of Davidson County, Tennessee.

13.     Defendant, Mary M. Wester, as Trustee of the Mary M. Wester Revocable Trust (the "Wester Trust"), is a citizen and resident of Davidson County, Tennessee.

14.     On information and belief, Bill Gulas, aka William J. Gulas, was a member of and was the Owner and Operator of IRA Innovations, LLC and was a citizen and resident of the State of Alabama.  Upon information and belief, Mr. Gulas died since the filing of this action and Defendant Alycia White is the Executrix of the Estate of William J. Gulas.

15.     On information and belief, Defendant Mike Todd is an officer or manager of IRA Innovations, LLC and is a citizen and resident of Davidson County, Tennessee.

16.     This Court has personal jurisdiction over all Defendants.

17.     This action arises from contracts that were substantially performed in Davidson County, Tennessee.  All of the contracts listed herein involve property located in Davidson County, Tennessee and Deeds of Trust recorded in with the Davidson County Register of Deeds.  Several Defendants reside in Davidson County, Tennessee.

## II.  CLASS ACTION ALLEGATIONS

18.     This action is brought by plaintiffs on behalf of themselves and all other persons similarly situated whose joinder in this action is impracticable because there are more than 100 potential members of the class.

19.     There are questions of law and fact common to the class. All members of the putative class are borrowers from Defendants Mary M. Wester, individually, or as Trustee of the Mary M. Wester Trust, IRA Innovations, LLC, Knox Valley Partners, LLC, or Morris Family Holdings, LLC.  All of the borrowers, including members of the class, have been charged interest that is usurious under Tennessee law.  Defendants Trey Cain, Cain & Associates, LLC, and Tennessee Title & Escrow Affiliates, LLC are involved in every transaction listed herein with the Plaintiffs and many other transactions with members of the putative class.  Of the transactions enumerated herein, Mr. Cain drafted each of the usurious promissory notes, and on information and belief, received payment of some of the usurious interest for each of the transactions.  There are in excess of 100 deeds of trust in favor of Ms. Wester and/or the Wester Trust recorded in Davidson County alone where Mr. Cain is/was the trustee.  Similarly, IRA Innovations has more than 30 such deeds of trust.  Simply put, the Defendants are in the business of

4

making usurious loans and have conspired with each other to violate the laws against charging excessive interest and to violate the Racketeer Influenced and Corrupt Organizations Act with respect to each member of the class.

20.     The claims of the representative party(ies) are typical of the claims of the class in that they seek damages for violations of the usury laws, RICO, civil conspiracy, and breach of contract by Defendants.

21.     The representative party(ies) will fairly and adequately protect the interests of the class.

22.     The Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.


### III.  FACTS

23.     Seanache was in the business of real estate development.  Seanache primarily funded its development projects through loans.

24.     In or about 2014, Richard Potts, the President of Seanache, met Defendant Trey Cain, when Mr. Cain, through his title company, Tennessee Title, conducted a closing involving Seanache.

25.     Subsequently, Mr. Cain offered to perform a number of things for Seanache.  First, Mr. Cain offered to find investors to loan Seanache money for development and construction projects.  Second, Mr. Cain offered to legally represent Mr. Potts and Seanache, and did so personally and through his law firm, Cain &

5

Associates. This legal representation would include drafting and reviewing loan documents, deeds, covenants and restrictions for property owned by Seanache, and similar documents related to Seanache's development and construction projects. Finally, Mr. Cain offered that Tennessee Title would close the loans and real estate purchases involved in these transactions. Cain & Associates would make money by charging for drafting loan and purchase documents for each transaction, and Tennessee Title would make money by being paid a portion of the title insurance premiums as the title agent and other closing costs.

26. Seanache agreed to these terms, and in early 2015 Mr. Cain brought Seanache its first lender, Mainsale, LLC ("Mainsale"). On March 31, 2015, Mainsale loaned Seanache $141,000 to purchase improved real property located at 616 Durrett Avenue, in Nashville (the "Durrett Property"), and to rehabilitate the house on this property. Mr. Cain drafted all of the loan documents, including a promissory note, a copy of which is attached as **Exhibit 1** (the "Durrett Note"), for Seanache.

27. Seanache believed that Mr. Cain and Cain & Associates were acting in Seanache's best interest in drafting the loan documents and closing the purchase of the Durrett property. Seanache has subsequently learned that this is not the case. For example, the Durrett Note contains an interest rate that, in its face, is usurious under Tennessee law. The maximum lawful interest rate for a non-financial institution such as Mainsale at the time the promissory note was drafted was 7.25% per annum. The Durrett Note, which has a 180-day term, calls for interest to be paid at 12% per annum, and requires that all amounts due under the Note be paid by the end of the term.

6

28.     The Durrett Note also charges a 3% "transaction funding fee." This so-called "fee," in fact, is further consideration for the loaning of money over a period of time and is thus merely additional and illegal interest. The additional 3% interest is not 3% *per annum*, but rather is a flat 3% of the principal. Since the Durrett Note has a 180 day term, the 3% additional interest is actually 6% *per* annum on the face of the note, and the actual rate of interest on the face of the Note is 18% per annum. This interest rate is well more than two times the maximum lawful interest rate at the time of the Durrett Note, which was 7.5%.

29.     Seanache was able to rehabilitate and sell the Durrett Property in less than seven months, and on October 8, 2015 sold the Durrett Property for $249,942. Under the terms of the Durrett Note, the entire principal balance and all accumulated interest (including the 3% "transaction funding fee") were to be paid at the closing for the sale of the property. Thus, at the closing on October 8, 2015, Seanache paid Mainsale $155,764.12. Of this amount, $14,764.12 constitutes interest. This reflects an effective interest rate of 20.01%, which is more than two (2) times the maximum legal rate. A copy of the settlement statement for the Durrett Property is attached as **Exhibit 2**. On the settlement statement, as on each of the settlement statements for the loans that are the subject of this Complaint, the 3% "transaction funding fee" is not set forth as an "expense" or a separate charge. Rather, the 3% "transaction funding fee" was simply included with the rest of the interest and principal that was paid to Mainsale.

30.     Seanache paid Cain & Associates a $250 fee and Tennessee Title received $908.50 as its portion of the title insurance premium upon the closing of the Durrett

7

property purchase by Seanache. Seanache also paid Tennessee Title a closing fee of $250 upon the sale of the Durrett Property.

31. After the Durrett Property purchase, Mr. Cain brought several other lenders to Seanache. Mr. Cain drafted promissory notes for each of these lenders, all of which, with the exception of one, contained interest rates of 12% per annum, plus a 3% "transaction funding fee," and had 180 day terms. This Complaint seeks relief related to twenty-two of these loans. All but one of these notes had, on their faces, interest rates that were at least twice as high as the maximum lawful rate.

32. In most of these transactions, multiple persons combined as lenders, and Mr. Cain drafted a "Series Promissory Note" for each Defendant. In each of these transactions, each of the Series Promissory Notes was secured by a single Deed of Trust, drafted by Mr. Cain, for which Mr. Cain, who was Seanache's lawyer, acted as the trustee for all of the lenders. In each of these series promissory notes, Mr. Cain gave the group of lenders a name, always related to the address of the property serving as collateral for the loans. For example, for the loan that was collateralized by the property located at 919 South 12th Street, the group of four lenders was named the "919 S 12th Street Project Series Lenders." All of the series promissory notes had the following provision, with only the name of the Series Lenders and the amount of the loan changing:

> Additional Notes Secured. **This Note is one of a series of promissory notes** executed by the Borrower in the total amount of $200,000.00 (the "802 South 12th Street Project Series"). The Series is secured by the Deed of Trust ("Deed of Trust") collectively and any default by Borrower under any note in the Series shall be considered a default under all the notes in the Series. **Lender shall be referred to as the "919 S 12 Street Project**

8

**Series Lenders" which consists solely of Diane Tito Griffin, Susan Oetzel, Carol Smith, and Mainsale LLC a Tennessee limited liability company** in the Deed of Trust. All funds paid by Borrower whether as principal, interest or expenses, or funds collected by virtue of any collection effort by any Holder of a Series Note, including foreclosure of the Deed of Trust, shall be paid proportionately to all Holders of Series Notes so that the Series Notes shall be treated as one note.

33. All of the Deeds of Trust identified the "Series Lender" as the beneficiary.

For example, the Deed of Trust for the loan collateralized by the property located at 919

South 12 Street stated as follows:

**THIS INSTRUMENT** is executed as of this **25th day of May, 2016** by **Seanache Homes, Inc., a Nevada Corporation** ("Grantor"), evidencing Grantor's conveyance to **Trey Cain (c/o Cain & Associates, PLLC),** Trustee ("Trustee"), a resident of Williamson County, State or Tennessee whose business address is 7105 Crossroads Blvd., Suite 101, Brentwood, Tennessee 1,7027, for the benefit of **The "919 S 12th Street Project Series" which consists solely of the following: Diane Tito Griffin, Susan Oetzel, Carol Smith, and Mainsale, LLC a Tennessee limited liability company** ("Beneficiary").

34. Additionally, the Deeds of Trust for the "series promissory notes" all

contained the following provisions, with only the name of the Series Lender changing:

1. **Taxes and Assessments; Annual Reports.** Grantor shall pay when due all taxes and assessments now existing or hereafter levied or assessed upon the Property. Grantor shall, without demand, provide Beneficiary and/or Trustee with evidence of the payment of all such taxes and assessments accrued over each year by March 31 of the following year by mailing the evidence of payment to the following address: **The 802 South 12th Street Project Series Lenders, c/o Cain & Associates, PLLC, Attn: Trey Cain, 7105 Crossroads Blvd., Suite 101, Brentwood, TN 37027.**

2. **Insurance.** Grantor shall keep the Property insured for the benefit of Beneficiary against "all risks of physical loss" ( except earthquake, unless Beneficiary specifically so requires, and also including flood insurance, if

9

applicable) under a casualty insurance policy  . . .All such casualty policies shall name Beneficiary as insured mortgagee pursuant to a non-contribution mortgagee clause with the following loss/payee language:

**The 802 South 12th Street Project Series Lenders**
**C/O Cain & Associates, PLLC**
**Attn: Trey Cain**
**7105 Crossroads Blvd., Suite 101**
**Brentwood, TN 37027**

35.     In the Seanache loans, the Defendants making loans joined together as "Series Lenders" in multiple different combinations, with as few as two and as many as seven Defendants combining in any one loan.

36.     The Notes that Plaintiffs currently have access to are attached as exhibits to this Complaint.  The "Series Notes" are joined together as collective exhibits by series. The following is a chart of the loans, containing the property that served as collateral and the names of the lenders for each loan.  The chart also identifies whether the loan was a "series loan," the name of the "series lenders," if any, and the exhibit number for the notes:

| | Property | Lenders | Series Notes | Series Name | Exhibit |
|---|---|---|---|---|---|
| 1 | 641 Gibson Dr. | Mainsale | No | None | 3 |
| 2 | 615 Durrett Ave. | Mainsale | No | None | 1 |
| 3 | 201 Donna Dr | Mainsale | No | None | 4 |
| 4 | 802 South 12th St | Mainsale Knox Valley Partners Morris Family Holdings | Yes | 802 South 12th St Project Series Lenders | 5 |
| 5 | 1136 Pierce Rd | Mainsale Steve Brakman | Yes | 1136 Pierce Rd Project Series Lenders | 6 |
| 6 | 1917 Moran Ave | Mainsale Steve Brakman Craig Dowling | Yes | 1917 Moran Ave Project Series Lenders | 7 |
| 7 | 2402 Carter St | Mainsale | Yes | 2402 Carter St Project Series Lenders | 8 |

| | | | | | |
|---|---|---|---|---|---|
| | | Craig Dowling | | | |
| | | Steve Brakman | | | |
| 8 | 2410 Porter Rd | Wester Trust | No | None | 9 |
| 9 | 2414 Pafford Dr | Mainsale | Yes | 2414 Pafford Dr Project Series Lenders | 10 |
| | | Steve Brakman | | | |
| | | Craig Dowling | | | |
| 10 | 919 S 12th St | Diane Griffin | Yes | 919 S 12th St Project Series Lenders | 11 |
| | | Carol Smith | | | |
| | | Susan Oetzel | | | |
| | | Mainsale | | | |
| 11 | 853 Rose Park Dr | Steve Brakman | Yes | 853 Rose Park Dr Project Series Lenders | 12 |
| | | Scott Patchett | | | |
| | | Carol Smith | | | |
| | | Mainsale | | | |
| 12 | 835 Rose Park Dr | IRA Inn. | Yes | 835 Rose Park Dr Project Series Lenders | 13 |
| | | IRA Inn. (Je. Larson) | | | |
| | | IRA Inn. (Ju. Larson) | | | |
| 13 | 1110 Stainback | Diane Griffin | Yes | 1110 Stainback Project Series Lenders | 14 |
| | | Steve Brakman | | | |
| | | Scott Patchett | | | |
| | | Morris Fam. Holdings | | | |
| 14 | 2114 Sharondale Ave | Steve Brakman | Yes | 2114 Sharondale Ave Project Series Lenders | 15 |
| | | Mainsale | | | |
| | | Diane Tito | | | |
| 15 | 4306 Westlawn | Mainsale | Yes | 4306 Westlawn Project Series Lenders | 16 |
| | | Steve Brakman | | | |
| | | Craig Dowling | | | |
| | | David Kovach | | | |
| 16 | 2803 Meadow Rose | James Goll | Yes | 2803 Meadow Rose Project Series Lenders | 17 |
| | | IRA Inn. (Ju. Larson) | | | |
| | | Larson Family Trust | | | |
| | | IRA Inn. (J. McDonald) | | | |
| 17 | 1215 Linden Ave | Mainsale | Yes | 1215 Linden Ave Project Series Lenders | na |
| | | Steve Brakman | | | |
| | | Craig Dowling | | | |
| 18 | 409 Ther. Ave | Mainsale | Yes | 409 Ther. Ave Project Series Lenders | 18 |
| | | Craig Dowling | | | |
| | | Steve Brakeman | | | |
| | | M. Wester/W. Trust | | | |
| 19 | 411 Ther. Ave | Jerry and Judy Larson | Yes | 411 Ther. Ave Project Series Lenders | 19 |
| | | Parker Place | | | |
| | | Jerry Larson | | | |

11

| | | | | |
|---|---|---|---|---|
| | | Scott Patchett | | |
| | | Mainsale | | |
| | | IRA Inn. (P. Moss) | | |
| | | Mainsale | | |
| 20 | Shor. Agmt 901 12th | Mainsale | n/a | n/a |
| 21 | Shor. Agmt 409 Ther. | Mainsale | No | 20 |
| | | Craig Dowling | | |
| | | Steve Brakman | | |
| 22 | Shor. Agmt 411 Ther. | Mainsale | No | 21 |
| | | Scott Patchett | | |
| | | Jerry Larson | | |
| | | Parker Place Partners | | |
| | | IRA Inn. (P. Moss) | | |

38.     The Deeds of Trust for the "series lenders" are attached hereto as collective **Exhibit 22**.

39.     The Defendants who made usurious loans to Seanache are referred to herein as the "Lender Defendants."  They are Knox Valley Partners, Morris Family Holdings, Wester Trust, IRA Innovations, and Patrick Moss.

40.     Although Seanache believed that Cain, Cain & Associates and Tennessee Title represented Seanache as counsel, on information and belief Cain, Cain & Associates and Tennessee Title deceived Seanache and actually represented the adverse interests of the Lender Defendants and shared in the profits from the transactions.  On information and belief, the lenders to Seanache paid Mr. Cain some of the usurious interest that they collected from Seanache.  These payments, however, do not show up on the settlement statements.

41.     On information and belief, Knox Valley Partners and Morris Family Holdings are both owned and/or controlled, in whole or in part, by Mr. Cain and his wife,

12

Kali Cain. Both Knox Valley Partners and Morris Family Holdings charged and collected usurious interest at more than twice the lawful rate from Seanache –the client of Mr. Cain, Cain & Associates and Tennessee Title – based on promissory notes drafted by Mr. Cain. The usurious interest for the benefit of Mr. Cain's entities was collected by Mr. Cain from his client Seanache in closings conducted by Mr. Cain as Seanache's closing agent.

42. On October 14, 2015, the Wester Trust loaned Seanache $183,180.93 to purchase real property located at 2410 Porter Road (the "Porter Road Property"). The promissory note for this loan, which was drafted by Mr. Cain, called for interest at a rate of 15% per annum, plus a 3% "transaction funding fee" to be paid at the closing when Seanache sold the Porter Road Property. The note had a 120 day term. Thus, the effective interest rate for the note on its face was 21%.

43. Seanache rehabilitated the Porter Road property and sold it for $315,000.00 on May 13, 2016. Mr. Cain handled the closing for Seanache. At the closing on May 13, 2016, Seanache paid the "First Mortgage Loan" lender, which Seanache assumes was the Wester Trust, $23,311.59 in interest, which equates to interest at the rate of 23.62% per annum. This is not only several points higher than called for in the promissory note, but also is more than three (3) times the maximum legal interest rate for this transaction, which was 7.25% on the date that the Porter Road promissory note was executed and 7.5% when the illegal debt was paid.

44. Furthermore, Mr. Cain arranged at the closing of the Porter Road Property for payments to be made to IRA Innovations and Morris Family Holdings, in the amounts

13

of $30,106.07 and $30,115.11, respectively. On the settlement statement, which is attached as **Exhibit 23**, these payments are reflected as "HELOC" payments. Seanache has never had any home equity line of credit with either IRA Innovations or Morris Family Holdings and did not borrow money from either of these entities in the Porter Road Property transaction. Seanache does not know of any legitimate reason that either IRA Innovations or Morris Family Holdings should have been paid any money from this closing and does not recall seeing these payments on the settlement statement at the time of the closing. Although the settlement statement contains Mr. Potts' signature, his signature is on a separate page from the rest of the document. Seanache did not discover that the payments to IRA Innovations or Morris Family Holdings were made until July 2019. It is unknown at this time as to what Mr. Cain did with this money that he illegally took from Seanache.

45. The Durrett Property and Porter Road Property transactions are just two examples of many transactions that were the result of Defendants' conspiracy. Mr. Cain has not provided Seanache with all of the loan documents. Furthermore, in some of the transactions, multiple lenders were paid with one payment, so it is not possible for Seanache to tell how much each specific lender received. The following are transactions in which Mr. Cain and the Lender Defendants conspired to collect usurious/illegal interest and excessive loan charges from Seanache, based on the incomplete information currently in Seanache's possession:

| Property | Date | Lender | Principal | Interest | Int | Max |
|----------|------|--------|-----------|----------|-----|-----|

| # | Address | Interest Paid | | | | Rate | Rate |
|---|---------|------|------|------|------|------|------|
| 1 | 641 Gibson Dr. | 8/11/2015 | Mainsale | 110000.00 | 5829.54 | 28.87 | 7.25 |
| 2 | 615 Durrett Ave. | 10/8/2015 | Mainsale | 141000.00 | 14764.12 | 20.01 | 7.25 |
| 3 | 201 Donna Dr | 12/11/2015 | Mainsale | 135455.44 | 7711.84 | 16.89 | 7.25 |
| 4 | 802 South 12th St | 10/31/2016 | Mainsale | $200,000 | $105,626.52 | 55.08 | 7.25 |
| | | 10/31/2016 | Knox Valley Partners | $50,000 | $16,909.03 | 35.27 | 7.25 |
| | | 10/31/2016 | Morris Family Holdings | $67,504.67 | $67,504.67 | 104.3 | 7.25 |
| 5 | 1136 Pierce Rd | 7/20/2016 | Mainsale | 76500.00 | 5823.00 | 18.28 | 7.5 |
| | | 7/20/2016 | Steve Brakman | 76500.00 | 5864.43 | 18.41 | 7.5 |
| 6 | 1917 Moran Ave | 5/31/2016 | Mainsale | 78333.34 | 5997.32 | 19.27 | 7.5 |
| | | 5/31/2016 | Steve Brakman | 78333.33 | 5997.31 | 19.27 | 7.5 |
| | | 5/31/2016 | Craig Dowling | 78333.33 | 5997.31 | 19.27 | 7.5 |
| 7 | 2402 Carter St | 5/18/2016 | Mainsale | 76333.34 | 5666.65 | 21.17 | 7.5 |
| | | 5/18/2016 | Craig Dowling | 76333.33 | 5680.99 | 21.22 | 7.5 |
| | | 5/18/2016 | Steve Brakman | 76333.33 | 5685.99 | 21.24 | 7.5 |
| 8 | 2410 Porter Rd | 5/13/2016 | Wester Trust | 183180.93 | 23321.49 | 21.92 | 7.25 |
| 9 | 2414 Pafford Dr | 9/08/2016 | Mainsale | 91000.00 | 363.33 | 0.51 | 7.25 |
| | | 9/8/2016 | Steve Brakman | 91000.00 | 11034.21 | 15.64 | 7.25 |
| | | 9/8/2016 | Craig Dowling | 91000.00 | 11027.46 | 15.63 | 7.25 |
| 10 | 919 S 12th St | 6/04/2018 | Diane Griffin | 103464.95 | 37615.48 | 17.93 | 7.5 |
| | | 6/04/2018 | Carol Smith | 92511.68 | unknown | ≥15% | 7.5 |
| | | 6/04/2018 | Susan Oetzel | 102511.68 | 20820.42 | 10.02 | 7.5 |
| | | 6/04/2018 | Mainsale | 112511.69 | 67780.47 | 29.71 | 7.5 |
| 11 | 853 Rose Park Dr | 7/7/2017 | Steve Brakman | 100000.00 | 16599.98 | 15.07 | 7.5 |
| | | 7/7/2017 | Scott Patchett | 100000.00 | 17391.16 | 15.79 | 7.5 |
| | | 7/7/2017 | Carol Smith | 50000.00 | 8366.68 | 15.19 | 7.5 |
| | | 7/7/2017 | Mainsale | 25000.00 | 4149.98 | 15.07 | 7.5 |
| 12 | 835 Rose Park Dr | 9/14/2017 | IRA Inn. | 75000.00 | 13150.00 | 14.75 | 7.5 |
| | | 9/14/2017 | IRA Inn. (Je. Larson) | 119000.00 | 20864.67 | 14.75 | 7.5 |
| | | 9/14/2017 | IRA Inn. (Ju. Larson) | 86000.00 | 15078.67 | 14.75 | 7.5 |
| 13 | 1110 Stainback | 9/26/2017 | Diane Griffin | 69750.00 | 14136.00 | 17.70 | 7.5 |
| | | 9/26/2017 | Steve Brakman | 69750.00 | 14136.00 | 17.70 | 7.5 |
| | | 9/26/2017 | Scott Patchett | 69750.00 | 14136.00 | 17.70 | 7.5 |
| | | 9/26/2017 | Morris Fam. Holdings | 69750.00 | 12213.50 | 15.29 | 7.5 |
| 14 | 2114 Sharondale Ave | 7/28/2017 | Steve Brakman | 305750.00 | 95,439.59 | 21.87 | 7.5 |
| | | 7/28/2017 | Mainsale | 398250.00 | 188,948.98 | 64.49 | 7.5 |
| | | 7/28/2017 | Diane Tito | 250000.00 | unknown | | 7.5 |
| 15 | 4306 Westlawn | 3/24/2017 | Mainsale | 98333.33 | 10882.56 | 15.90 | 7.5 |
| | | 3/24/2017 | Steve Brakman | 98333.33 | 10987.89 | 16.06 | 7.5 |
| | | 3/24/2017 | Craig Dowling | 98333.33 | 11023.37 | 16.11 | 7.5 |

15

| | | Date | Name | Amount | Amount 2 | Rate | Legal |
|---|---|---|---|---|---|---|---|
| | | 3/24/2017 | David Kovach | 75000.00 | 8650.00 | 16.57 | 7.5 |
| 16 | 2803 Meadow Rose | 9/26/2017 | James Goll | 25000.00 | 3799.99 | 15.33 | 7.5 |
| | | 9/26/2017 | IRA Inn. (Ju. Larson) | 75000.00 | 11400.00 | 15.33 | 7.5 |
| | | 9/26/2017 | Larson Family Trust | 187000.00 | 28423.99 | 15.33 | 7.5 |
| | | 9/26/2017 | IRA Inn. (J. McDonald) | 25000.00 | 3799.99 | 15.33 | 7.5 |
| 17 | 1215 Linden Ave | 9/7/2018 | Mainsale | 250000.00 | 49077.12 | 18.19 | 8.25 |
| | | 9/7/2018 | Steve Brakman | 250000.00 | 49094.41 | 18.19 | 8.25 |
| | | 9/7/2018 | Craig Dowling | 250000.00 | 48904.88 | 18.12 | 8.25 |
| 18 | 409 Ther. Ave | 5/11/2018 | Mainsale | 266477.17 | unknown | >15 | 7.5 |
| | | 5/11/2018 | Craig Dowling | 266477.17 | unknown | >15 | 7.5 |
| | | 5/11/2018 | Steve Brakeman | 266477.17 | unknown | >15 | 7.5 |
| | | unknown | M. Wester/W. Trust | 100000.00 | unknown | >15 | unk |
| 19 | 411 Ther. Ave | 04/11/2019 | Jerry and Judy Larson | 123500.00 | unknown | >15 | 7.5 |
| | | 04/11/2019 | Parker Place | 98000.00 | unknown | >15 | 7.5 |
| | | 04/11/2019 | Jerry Larson | 64000.00 | unknown | >15 | 7.5 |
| | | 04/11/2019 | Scott Patchett | 222500.00 | unknown | >15 | 7.5 |
| | | 04/11/2019 | Mainsale | 300000.00 | unknown | >15 | 7.5 |
| | | 04/11/2019 | IRA Inn. (P. Moss) | 92000.00 | unknown | >15 | 7.5 |
| | | unknown | Mainsale (River Edge) | 123500.00 | unknown | >15 | 6.3 |
| 20 | Shor. Agmt 901 12th | 5/31/2018 | Mainsale | 60140.20 | unpaid | >15 | 8.75 |
| 21 | Shor. Agmt 409 Ther. | 3/18/2019 | Mainsale | 54107.32 | unpaid | >15 | 9.5 |
| | | 3/18/2019 | Craig Dowling | 54107.32 | unpaid | >15 | 9.5 |
| | | 3/18/2019 | Steve Brakman | 54107.32 | unpaid | >15 | 9.5 |
| 22 | Shor. Agmt 411 Ther. | unpaid | Mainsale | 258032.75 | unpaid | >12 | 9.5 |
| | | unpaid | Scott Patchett | 258032.75 | unpaid | >12 | 9.5 |
| | | unpaid | Jerry Larson | 258032.75 | unpaid | >12 | 9.5 |
| | | unpaid | Parker Place Partners | 258032.75 | unpaid | >12 | 9.5 |
| | | unpaid | IRA Inn. (P. Moss) | 258032.75 | unpaid | >12 | 9.5 |

46. As the chart above demonstrates, Seanache was charged and paid more than twice the maximum legal rate in the overwhelming majority of the transactions for which Plaintiff has complete information. The Wester Trust, for example, collected more than 21% interest on the Porter Road transaction, when the maximum lawful rate was only 7.25%.

16

47. The Defendants were an association-in-fact enterprise, with the purpose of profiting from the collection of unlawful debt from Seanache. The leader of this enterprise was Mr. Cain, who brought the Lender Defendants together, decided which lenders would be involved in the loans, created the "series lenders," drafted the promissory notes, deeds of trust, and other documents, acted as trustee under the Deeds of Trust, and closed both ends of the transactions. The Defendants had relationships among and between themselves, as each of the Defendants who made a loan was a "series lender" on at least one of the loans, in multiple combinations. The enterprise consisting of all of the Defendants and others had sufficient longevity to accomplish the purpose of collecting unlawful debt from Seanache, as it began in 2015 and continues to exist today.

48. In the alternative, each of the "series lenders," along with Mr. Cain and his entities, was an association-in-fact enterprise, which had the purpose of collecting unlawful debt. The "series lenders" had relationships related to the collection of unlawful debt, as reflected by the series promissory notes and deeds of trust, all created by Mr. Cain. Each of these enterprises had sufficient longevity to accomplish its purpose of collecting unlawful debt.

49. Additionally, or in the alternative, the Defendants that are limited liability companies were association-in-fact enterprises, consisting of the entity and its members, along with Mr. Cain and his entities. Further, the "series lenders" were partnerships or joint ventures between the various Defendants that also constituted association-in-fact enterprises along with Mr. Cain and his entities. Furthermore, upon information and belief, Mr. Cain also received other monetary benefits from the transactions based upon a

17

partnership or joint venture Mr. Cain had with the Defendants, which also constituted an enterprise or enterprises between Mr. Cain and the other Defendants. The joint enterprise between Mr. Cain and the other Defendants has existed since early 2015 and continues to operate presently. Additionally, upon information and belief, the various entities and individuals that are Defendants herein participated in these transactions as joint venturers and such also constituted an enterprise or enterprises.

50. The persons or entities who acted as lenders in this enterprise or enterprises either as entities, listed lenders on the loan documents or owners/members, managers, or directors of the entities listed on the loan documents are Knox Valley Partners, Morris Family Holdings, Kali Cain, Mainsale, IRA Innovations, Steven Brakman, Craig Dowling, Scott Patchett, Carol Smith, Diane Tito Griffin, Susan Oetzel, David Kovach, Jerry Larson, Judy Larson (individually and as Trustee of the Larson Family Trust), Jane McDonald, Parker Place, Mary Wester (individually and as Trustee of the Wester Trust), Patrick Moss, Daniel Tito, Bill Gulas, and Mike Todd. Knox Valley Partners, Morris Family Holdings, Wester Trust, IRA Innovations, and Patrick Moss referred to herein as the "Lender Defendants."

51. The activities related to Defendants' enterprises affected interstate commerce. Plaintiff is a Nevada corporation. Morris Family Holdings is a Wyoming limited liability company. IRA Innovations is an Alabama limited liability company, and the promissory notes for which it is the lender directs payments to be made in Alabama. Mr. Gulas was a resident of Alabama. Susan Oester is a resident of Ohio, and payments under the promissory notes for which she is a Lender are directed to be made in Ohio.

18

Carol Smith is a resident of Florida, and any notes for which she was a Lender required payments to be made in the State of Florida. Further, one of the primary purposes of the usurious loans was the funding of construction that utilized products and materials produced and/or sold in numerous states, which further affected interstate commerce.

52. With a few exceptions the loans were paid off when Seanache sold the improved property that served as collateral for the loans. In each of these statements, the 3% "transaction funding fee" is not set forth as a "loan charge" or a separate fee. Rather, it is included in the loan payoff of principal and interest that is paid to the lender. The closing statements currently available to the Plaintiffs' possession are attached as collective **Exhibit 24**.

53. Defendants not only knew that the Lender Defendants were charging and collecting usurious interest but they also included specific language in the promissory notes that attempted to avoid legal liability for such illegal interest. As already stated, characterizing the flat 3% additional interest to be paid on each Note was a deceit designed to give the appearance that the interest was less than what was actually provided for by the note. Further, Mr. Cain, as a lawyer specializing in real estate transactions, was well aware of the Tennessee usury laws. Not only did Seanache execute the promissory notes as maker/borrower, but Defendants also executed many of the promissory notes drafted by Mr. Cain, all of which contained the following, or a substantially similar, provision:

> All agreements made by Borrower relating directly or indirectly to the indebtedness

19

evidenced by this Note and the Deed of Trust arc expressly limited so that in no event or contingency whatsoever shall the amount of interest received, charged or contracted for by Lender exceed the highest lawful amount of interest permissible under the laws of the State of Tennessee or any federal statute or regulation applicable to Lender. If. under any circumstances whatsoever, performance of any provision of this Note or the Deed of Trust. at the time performance of such provision shall be due shall result in the highest lawful rate of interest permissible under such laws being exceeded, then ipso facto, the amount of interest received, charged or contracted for by Lender shall be reduced to the highest lawful amount of interest permissible under such laws, and if for any reason whatsoever, Lender shall ever receive. charge or contract for, as interest, an amount which would be deemed unlawful, such amount of interest deemed unlawful shall be refunded to Borrower (if theretofore paid). Without limitation of the foregoing, any amounts contracted for, charged or received under the Deed of Trust relating directly or indirectly to the indebtedness evidenced by this Note, included for the purpose of determining whether the interest rate would exceed the highest lawful rate, shall be calculated. to the extent permitted by the laws of the State of Tennessee or any applicable federal statute or regulations. by amortizing. prorating, allocating and spreading such interest over the period of the full stated term of this Note.

54. Most, if not all, of the promissory notes also provide that in the event of default by Seanache, the unpaid amount "shall bear interest at the highest rate allowed by law," which is a further indication that Defendants were aware of the usury laws.

55. All of the notes described in the chart above were usurious on their face and are thus unenforceable by the Lender Defendants pursuant to Tenn. Code Ann. § 47-14-117(a).

56. Defendants are in the business of making usurious loans.  For example, there are in excess of 100 deeds of trust in favor of Ms. Wester and/or the Wester Trust recorded in Davidson County alone where Mr. Cain is/was the trustee, and on information and belief, most, if not all of these loans are usurious. Similarly, IRA Innovations has more than 30 such deeds of trust in Davidson County.

20

57.     In addition to conspiring with each other, the Defendants conspired with many other persons to violate the usury laws.  For example, the Wester Trust conspired with several other lenders to violate the usury laws in transactions where Wester Trust was one of the "Series Lenders."  Similarly, Kali Cain, as a principal of Knox Valley Partners and/or Morris Family Holdings, conspired with others to violate the usury laws where these entities were "Series Lenders," and Mr. Gulas and Mr. Todd conspired with Lender Defendants in transactions in which IRA Innovations was a "Series Lender."

## CAUSES OF ACTION
## COUNT ONE

### USURY AND EXCESSIVE LOAN CHARGES

58.     Plaintiffs hereby incorporate all preceding allegations.

59.     The Lender Defendants have charged and collected usurious interest from Seanache.  Pursuant to Tenn. Code Ann. § 47-14-114, Sake, as assignee of Seanache is entitled to recovery of all interest paid in excess of authorized interest and loan charges.  Alternatively, if the assignment of such claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

60.     The Lender Defendants have engaged in unconscionable conduct in transactions wherein they charged and collected usurious interest.  As a non-exclusive example of unconscionable conduct, the Lender Defendants knew that they were charging interest in violation of Tennessee law.  Further, the overwhelming majority of

21

the interest rates were more than twice the maximum lawful rate, and some were more than three times the lawful rate. Pursuant to Tenn. Code Ann. § 47-14-117, Plaintiffs are entitled to recover twice the amount of any interest collected by the Lender Defendants, plus reasonable attorneys' fees.

## COUNT TWO

## RICO

61.     Plaintiffs hereby incorporate all preceding allegations.

62.     Defendants have been and continue to be engaged in conduct of an enterprise or multiple enterprises to collect unlawful debt, in violation of 18 U.S.C. § 1962(c).

63.     Defendants had and continue to have the common purpose of exploiting Plaintiffs by charging and collecting unlawful debt as defined by 18 U.S.C. § 1961.

64.     Defendants have relationships with each other as alleged above.  These relationships have sufficient longevity to permit pursuit of the enterprise's purpose of collecting unlawful debt.

65.     The activities related to Defendants' enterprise affected interstate commerce.

66.     Defendants had an agreement to participate in activities that, if completed, would constitute a violation of 18 U.S.C. § 1962(c)

67.     Seanache suffered monetary loss as a result of Defendants' violation of 18 U.S.C. § 1962.

22

68.     Pursuant to 18 U.S.C. § 1964(c), Sake, as assignee of Seanache, is entitled to treble damages and all costs of this litigation, including reasonable attorneys' fees. Alternatively, if the assignment of such claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

69.     Upon information and belief, the Defendants are continuing to engage in the unlawful acts complained of herein with parties other than the Plaintiffs.

70.     Pursuant to 18 U.S.C. § 1964(a), this Court should enter an order prohibiting Defendants from engaging in future charging or collection of unlawful debt, whether from Plaintiffs or other third parties.

## COUNT THREE

## CIVIL CONSPIRACY

71.     Plaintiffs hereby incorporates all preceding allegations.

72.     Defendants had a common design, each having the intent and the knowledge of the other's intent, to accomplish by concerted action the unlawful purpose of collecting usurious interest and excessive loan charges.

73.     Mr. Cain and the Lender Defendants engaged in multiple over acts in furtherance of this common design.

74.     Seanache suffered monetary damages as a result of the conspiracy.

75.     The actions of Mr. Cain, individually and through Cain & Associates and Tennessee Title, and the Lender Defendants were intentional, thereby entitling Sake, as assignee of Seanache, to punitive damages. Alternatively, if the assignment of such

claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

76.     The Lender Defendants are jointly and severally liable, along with Mr. Cain, Cain & Associates, and Tennessee Title, for all damages suffered by Seanache as a result of the conspiracy.


# COUNT FOUR

## RICO CONSPIRACY

77.     Plaintiffs hereby incorporate all preceding allegations.

78.     Defendants have engaged in a conspiracy to violate 18 U.S.C. § 1962(c), as set forth in Count Two.

79.     Seanache suffered monetary loss as a result of Defendants' conspiracy.

80.     Pursuant to 18 U.S.C. § 1964(c), Sake, as assignee of Seanache, is entitled to treble damages and all costs of this litigation, including reasonable attorneys' fees. Alternatively, if the assignment of such claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

81.     The Defendants are jointly and severally liable for all damages suffered by Seanache as a result of the conspiracy.


# COUNT FIVE

## BREACH OF CONTRACT

82.     Plaintiffs hereby incorporate all preceding allegations.

83.     Each of the Promissory Notes provides that any unlawfully excessive interest shall be repaid to Seanache.

84.     The Lender Defendants have breached the promissory notes by failing to pay any of the unlawfully excessive interest to Seanache or its assignee, Sake.

85.     Plaintiffs have suffered monetary loss as a result of these breaches.

86.     Sake, as assignee of Seanache, is entitled to damages and all costs of this litigation, including reasonable attorneys' fees, for such breaches. Alternatively, if the assignment of such claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

## COUNT SIX

## BREACH OF FIDUCIARY DUTY

87.     Plaintiffs hereby incorporate all preceding allegations.

88.     Mr. Cain owed a fiduciary duty to Seanache.

89.     Mr. Cain breached this fiduciary duty by engaging in the conduct described in this Complaint, which conduct has caused Seanache damages. As a non-exclusive example, Mr. Cain caused Seanache to pay Morris Family Holdings and IRA Innovations more than $60,000 that Seanache did not owe to these entities.

25

90. Sake, as assignee of Seanache, is entitled to damages and all costs of this litigation, including reasonable attorneys' fees for such breaches. Alternatively, if the assignment of such claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

**COUNT SEVEN**

**UNJUST ENRICHMENT**

91. Plaintiffs hereby incorporate all preceding allegations.

92. IRA Innovations and Morris Family Holdings have received and recognized a benefit from Seanache. Specifically, IRA Innovations and Morris Family Holdings received $30,106.07 and $30,115.11, respectively, at the closing for the sale of the Porter Road Property.

93. The circumstances are such that Defendants should not be allowed to retain the benefit bestowed upon them by Seanache.

94. Sake, as assignee of Seanache, is entitled to damages and all costs of this litigation for such unjust enrichment. Alternatively, if the assignment of such claims to Sake is not effective, Seanache is entitled to recovery and any such recovery is the property of Sake subject to the terms of the assignment between Seanache and Sake.

26

## COUNT EIGHT

## CLASS ACTION

95.     This action has been brought by Plaintiffs on behalf of themselves and all other persons similarly situated whose joinder in this action is impracticable because there are more than 100 potential members of the class.

96.     There are multiple questions of law and fact common to the class.

97.     The claims of the representative party are typical of the claims of the class in that they seek damages for violations of the usury laws, RICO and RICO civil conspiracy, and breach of contract based on the standard loan documents authored by Mr. Cain in furtherance of the Defendants' conspiracy.

98.     The representative party will fairly and adequately protect the interests of the class.

99.     The Defendants acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.


## IV.  PRAYER FOR RELIEF

Premises considered, Plaintiffs respectfully request the Court to grant them the following relief:

a.      Empanel a jury to hear the issues joined by the pleadings.

b.      Enter an order pursuant to Fed. R. Civ. P. 23.03 that this action should be maintained as a class action.

c.      Award Plaintiffs and the members of the class compensatory damages for excessive interest in an amount to be determined at trial, but not less than $750,000.

c.      Award Plaintiffs and the members of the class a judgment for double all interest collected by the Lender Defendants and reasonable attorneys' fees pursuant to Tenn. Code Ann. § 47-14-117.

d.      Award Plaintiffs and the members of the class compensatory damages for breach of contract in an amount to be determined at trial, but not less than $750,000.

e.      Enter a temporary and permanent injunction prohibiting the Lender Defendants from charging or collecting any unlawful debt and prohibiting Mr. Cain from engaging in any transaction as a lawyer in which unlawful debt is collected and/or charged.

g.      Award Plaintiffs and the members of the class punitive damages in an amount to be determined at trial, but not less than $1,500,000.

h.      Provide Plaintiffs with what further relief to which they may be entitled.

Respectfully submitted:

*s/ J. Brad Scarbrough*
J. Brad Scarbrough, BPR# 20980
Gregory H. Oakley BPR# 16237
BuildLaw, PLC
4300 Sidco Dr., Ste. 200
Nashville, Tennessee 37204
Phone: 615-369-9996
Fax: 615-515-4491
Email: brad@build.law
Email: greg@build.law
***Counsel for Plaintiffs***

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served, via email and U. S. Mail, on the following counsel of record, this the 20th day of July, 2021:

| | |
|---|---|
| Michael G. Abelow<br>Christina R.B. Lopez<br>SHERRARD ROE VOIGT &<br>HARBISON, PLC<br>150 3rd Avenue South, Suite 110<br>Nashville, TN 37201 | Phillip G. Young Jr.<br>THOMPSON BURTON PLLC<br>One Franklin Park<br>6100 Tower Circle, Suite 200<br>Franklin, TN 37067 |
| William S. Walton<br>BUTLER SNOW LLP<br>150 3rd Avenue South, Suite 1600<br>Nashville, TN 37201 | Robert M. Burns<br>Howell & Fisher, PLLC<br>3310 West End Avenue, Suite 550<br>Nashville, TN 37203 |
| JOHN R. TARPLEY<br>Lewis, Thomason, King, Krieg &<br>Waldrop, P.C.<br>424 Church Street, Suite 2500<br>P.O. Box 198615<br>Nashville, Tennessee 37219 | RICHARD N. BIEN<br>Lathrop GPM LLP<br>2345 Grand Boulevard, Suite 2200<br>Kansas City, Missouri 64108 |

*s/ J. Brad Scarbrough*
J. Brad Scarbrough