**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SAKE TN, LLC, and SEANACHE HOMES, INC., for themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:21-cv-00108** |
| **TREY CAIN et al.,** | ) ) ) | **Judge Aleta A. Trauger** |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Before the court is the Motion to Dismiss Second Amended Complaint ("SAC") (Doc. No. 36) filed by defendants IRA Innovations, LLC ("IRA Innovations") and Mike Todd (collectively with IRA Innovations, the "moving defendants"). As set forth herein, the court finds that the SAC fails to state a colorable claim against Mike Todd. All claims against him will be dismissed. In all other respects, the Motion to Dismiss will be denied.

## I.      RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff Seanache Homes, Inc. ("Seanache"), alone, initiated this lawsuit in the Davidson County Chancery Court in October 2020. The original Complaint (Doc. No. 1-2) asserted claims under state law only. In early February 2021, Seanache, together with "Sake, LLC" (which has now been identified as Sake TN, LLC ("Sake")), filed a First Amended Complaint "for themselves and all others similarly situated," asserting the same state law claims and adding federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The defendants collectively removed the case to federal court on February 10, 2021 on the basis of federal question jurisdiction. (Doc. No. 1.) With the defendants' consent, the plaintiffs thereafter filed the SAC.

As set forth in the SAC, Plaintiff Seanache was in the business of real estate development.

(Doc. No. 20 ¶ 23.) It assigned some of its claims against the defendants to Sake pursuant to an Assignment Agreement. The SAC brings claims against Trey Cain, a licensed Tennessee attorney; Trey Cain's wife, Kali Cain; Trey Cain's law firm, Cain & Associates, PLLC ("Cain & Associates"); Trey Cain's title company, Tennessee Title & Escrow Affiliates, LLC ("Tennessee Title"); and various individuals and entities alleged to have been engaged in a scheme with Trey Cain and his wife and business entities to charge usurious interest on loans, including, in addition to the moving defendants, Knox Valley Partners, LLC ("Knox Valley"); Morris Family Holdings, LLC ("Morris Family Holdings"); Patrick Moss, as the person who owns Patrick Moss IRA, a self-directed Individual Retirement Account; Mary M. Wester, individually and as Trustee of the Mary M. Wester Revocable Trust ("Wester Trust"); and Alycia White, as executrix of the Estate of William J. Gulas, the former owner and operator of IRA Innovations. Defendant Mike Todd is alleged to be an officer or manager of IRA Innovations. (*Id.* ¶ 15.)

The plaintiffs allege that Seanache's president, Richard Potts, met Trey Cain in 2014 when Cain, through Tennessee Title, conducted a real estate closing involving Seanache. After that introduction, Cain offered to "find investors to loan Seanache money for development and construction projects," to provide legal representation to Potts and Seanache through Cain's law firm, Cain & Associates, and to perform the closings on loans and real estate purchases through Tennessee Title. (Doc. No. 20 ¶ 25.) Seanache agreed and, in early 2015, engaged in its first real estate transaction with Cain under that proposal. Cain brought Seanache its first lender, Mainsale, LLC ("Mainsale"), which extended a loan to Seanache in the amount of $141,000 to purchase and rehabilitate a residence located at 616 Durrett Avenue in Nashville. Cain drafted the loan documents, including the promissory note, and performed the closing through his law firm and title company. (*Id.* ¶ 26; *see also* Doc. Nos. 20-1, 20-2.) The promissory note for the loan on the Durrett property calls for interest at the rate of 12% per annum, which the plaintiffs allege was in excess of the maximum allowable rate of 7.25% per annum. The plaintiffs also allege that the

promissory note charges a 3% "transaction funding fee," which was actually additional interest at the rate of 6% per annum, bringing the total interest rate on the transaction to 18% per annum, or more than two times the lawful interest rate at the time of the transaction. (*Id.* ¶ 28.)

After this transaction, Cain brought Seanache other lenders for the purchase of other properties, each time drafting the promissory notes and the closing documents, and each time collecting usurious interest. With respect to most of these transactions, multiple persons or entitles combined as lenders, and Cain would draft a "Series Promissory Note" for each individual involved in the transaction as a lender. (*Id.* ¶ 31.) However, the Series Promissory Notes for the purchase of a particular property were secured by a single deed of trust, drafted by Cain, which identified the lenders collectively by referring to the "Series Lender" as the beneficiary of the deed of trust. For each transaction in which Seanache was involved, as few as two and as many as seven of the defendants joined together as "Series Lenders" on any one loan.

Under paragraph 36 of the SAC, the plaintiffs list twenty-two specific loans by property address, the lenders' names, the "series" name (if applicable), and the exhibit number to the SAC under which the loan documents in the plaintiffs' possession for each transaction may be found. The plaintiffs identify IRA Innovations as having been one of the series lenders for four of these loans. (*Id.* ¶ 36, at 11–12.) The SAC states that the "Defendants who made usurious loans to Seanache are referred to herein as the 'Lender Defendants.' They are Knox Valley Partners, Morris Family Holdings, Wester Trust, IRA Innovations, and Patrick Moss." (*Id.* ¶ 37.) At paragraph 44, the plaintiffs insert a second chart listing the same properties and identifying the principal amount of the loan, the interest charged and collected (if known), the effective interest rate, and the maximum interest rate in effect in Tennessee at the time of the closing. (Doc. No. 20 ¶ 44, at 14–15.)

In one of these transactions, Wester Trust loaned funds to Seanache for the purchase of real property located at 2410 Porter Road in October 2015. At the closing on May 13, 2016, Seanache

paid the "First Mortgage Loan" lender, presumably Wester Trust, $23,311.59 in interest, which the plaintiffs calculate to have been at an effective rate of 23.62% per annum. In addition to the payment of this allegedly usurious interest, "Mr. Cain arranged at the closing of the Porter Road Property for payments to be made to IRA Innovations and Morris Family Holdings, in the amounts of $30,106.07 and $30,115.11, respectively." (*Id.* ¶ 44.) The settlement statement identifies these payments as "HELOC" payments. (*Id.*; *see also* Doc. No. 20-23.) Seanache avers, however, that it never had a home equity line of credit with either IRA Innovations or Morris Family Holdings, did not borrow money from either of those entities in connection with the Porter Road property, does not recall seeing these payments on the settlement statement at the time of closing, and does not know of any legitimate reason that either entity was paid any money at the closing. (Doc. No. 20 ¶ 44.)

The plaintiffs allege that the defendants, collectively, operated as an "association-in-fact enterprise, with the purpose of profiting from the collection of unlawful debt from Seanache," and that Cain was the leader of this enterprise. (*Id.* ¶ 47.) In the alternative, they allege that each of the "series lenders," along with Cain and his entities, was an "association-in-fact enterprise," the purpose of which was to collect unlawful debt. (*Id.* ¶ 48.) Confusingly, after having identified Knox Valley Partners, Morris Family Holdings, Wester Trust, IRA Innovations, and Patrick Moss as the "Lender Defendants" (*id.* ¶ 37), the plaintiffs state that the term "Lender Defendants" as used in the SAC includes not only the "persons or entities who acted as lenders in this enterprise" and those that are "listed lenders on the loan documents," but also the "owners/members, managers, or directors of the entities listed on the loan documents," including Mike Todd. (*Id.* ¶ 50.)[1]

---

[1] In this paragraph, the SAC identifies as "Lender Defendants" several entities and individuals who are not actually named as defendants in this lawsuit, including Mainsale, Steven Brakman, Craig Dowling, Scott Patchett, Carol Smith, Diane Tito Griffin, Susan Oetzel, David Kovach, Jerry Larson, Judy Larson (individually and as Trustee of the Larson Family Trust), Jane

The plaintiffs allege that the "Defendants not only knew that the Lender Defendants were charging and collecting usurious interest but they also included specific language in the promissory notes that attempted to avoid legal liability for such illegal interest." (*Id.* ¶ 53.) This language provides that

> in no event or contingency whatsoever shall the amount of interest received, charged or contracted for by Lender exceed the highest lawful amount of interest permissible under the laws of the state of Tennessee or any federal statute or regulation applicable to Lender. . . . [A]nd if for any reason whatsoever, Lender shall ever receive, charge or contract for, as interest, an amount which would be deemed unlawful, such amount of interest deemed unlawful shall be refunded to Borrower (if theretofore paid).

(*Id.*)

The plaintiffs allege that all of the promissory notes for the transactions listed in the SAC "were usurious on their face," that the defendants, collectively, "are in the business of making usurious loans," and that they conspired with each other and "many other persons to violate the usury laws." (*Id.* ¶¶ 55–57.) The SAC claims that Mike Todd "conspired with the Lender Defendants in transactions in which IRA Innovations was a 'Series Lender.'" (*Id.* ¶ 57.)

Based on these allegations (and others involving Cain more specifically), the SAC asserts claims on behalf of the plaintiffs and a class of others similarly situated for (1) usury and excessive loan charges in violation of Tenn. Code Ann. § 47-14-114, against the "Lender Defendants" (Doc. No. 20, Count One); (2) engaging in the conduct of an enterprise or multiple enterprises to collect unlawful debt, as defined by 18 U.S.C. § 1961, in violation of RICO, 18 U.S.C. § 1962(c), against "Defendants" (*id.*, Count Two); (3) civil conspiracy to collect usurious interest and excessive loan charges, against the Lender Defendants, Trey Cain, Cain & Associates, and Tennessee Title (*id.*, Count Three); (4) RICO conspiracy to violate 18 U.S.C. § 1962(c), against "Defendants" (Doc.

McDonald, Parker Place, and Daniel Tito. (Doc. No. 20 ¶ 50.) All of these entities and individuals were, however, identified as defendants in a lawsuit filed by Seanache in July 2019 and voluntarily dismissed in December 2019. *See Seanache Homes, Inc. v. Cain*, No. 3:19-cv-00625 (M.D. Tenn. July 22, 2019) (Complaint).

No. 20 ¶ 78, Count Four); (5) breach of contract, specifically the provisions in promissory notes that require the repayment of unlawfully excessive interest to Seanache as borrower or Sake as Seanache's assignee, against the Lender Defendants (*id.*, Count Five); (6) breach of fiduciary duty against Cain individually (*id.*, Count Six); and (7) unjust enrichment against IRA Innovations and Morris Family Holdings (*id.*, Count Seven). Count Eight purports to assert most of the same causes of action on behalf of a class of similarly situated individuals.

The moving defendants now seek to dismiss the claims asserted against them. Along with the Motion to Dismiss and Memorandum of Law (Doc. Nos. 36, 37), the moving defendants submitted numerous documents in further support of their motion. (Doc. Nos. 37-1 through 37-15.) The plaintiffs have filed a Response in opposition to the motion (Doc. No. 40), and the moving defendants submitted a Reply (Doc. No. 44).

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to

"unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the plaintiff's burden, as mere consistency does not establish plausibility of entitlement to relief, even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the Complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## III. DISCUSSION

### A. Claims Against Mike Todd

The moving defendants argue that the claims against Todd, specifically, should be dismissed under Rule 12(b)(6), for failure to state a claim for which relief may be granted, because (1) Todd is not alleged to be a lender, for purposes of the usury claim against him in Count One;

(2) Todd is not a party to any contract, for purposes of the breach of contract claim in Count Five; (3) he is protected from liability by Tenn. Code Ann. § 48-217-101(a)(1), insofar as claims are asserted against him in his capacity as "officer or manager" of IRA Innovations, a limited liability company; and (4) the factual allegations in the SAC do not adequately plead any claim against him.

The plaintiffs offer threadbare opposition to these arguments, contained in a single paragraph at the end of their Response, in which they confirm that Todd is "not being sued for breach of contract" or "directly for collecting usurious interest." (Doc. No. 40, at 14.) Although they do not say so, this is presumably because Todd is not a "Lender Defendant" (even though he is identified as a "Lender Defendant" in paragraph 50 of the SAC). The plaintiffs nonetheless maintain that Todd is personally liable, because he is "part of the enterprise that constitutes IRA Innovations, which is part of the RICO claim" and has been "intricately involved in IRA Innovations . . . an officer, director or member, and has been part of the indisputably illegal conduct." (Doc. No. 40, at 14.) The plaintiffs further assert that others involved with IRA Innovations, including William Gulas "and/or multiple account holders of IRA Innovations," have "collectively engaged in an enterprise (via IRA Innovations) to conduct indisputably illegal conduct." (*Id.*)

Based on the plaintiffs' concessions and/or the language of the SAC, it is clear that the claims in Count One (usurious lending), Count Five (breach of contract), Count Six (breach of fiduciary duty), and Count Seven (unjust enrichment) are not asserted against Mike Todd. Count Three—for civil conspiracy to engage in usurious lending—is somewhat ambiguous, insofar as it first refers to "Defendants" collectively, but it appears only to be asserted against Cain and his entities and the "Lender Defendants," that is, the entities identified in paragraph 37 of the SAC. (*See* Doc. No. 20 ¶ 76 ("The Lender Defendants are jointly and severally liable, along with Mr. Cain, Cain & Associates, and Tennessee Title, for all damages suffered by Seanache as a result of

the conspiracy.").)

This leaves only the RICO and RICO conspiracy claims in Counts Two and Four of the SAC. RICO criminalizes conducting business through a pattern of racketeering activities and provides a civil cause of action for individuals injured by racketeering activity. 18 U.S.C. §§ 1962, 1964. The plaintiffs assert RICO claims under § 1962(c), which addresses a pattern of racketeering activity, and § 1962(d), which addresses a RICO conspiracy. "To state a claim under § 1962(c), a plaintiff must plausibly allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Section 1962(d) makes it unlawful for any person to conspire to violate subsections (a) through (c) of § 1692. "To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)). The existence of an agreement "can be shown if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise . . . ." *Id.* (quoting *Sinito*, 723 F.2d at 1261). However, a RICO conspiracy claim fails if the underlying RICO claim fails. *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 187 (6th Cir. 2020) (citing *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990)).

Regarding the first element of a RICO claim, conduct, the Sixth Circuit has explained that "[a] plaintiff must set forth allegations to establish that the defendant conducted or participated, 'directly or indirectly, in the conduct of [the RICO] enterprise's affairs.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791–92 (6th Cir. 2012) (quoting 18 U.S.C. § 1962(c)) (alteration added by the Sixth Circuit). While "RICO liability is not limited to those with primary responsibility for the enterprise's affairs," the defendants must have "conducted or participated in

the conduct of the '*enterprise's* affairs,' not just their *own* affairs.'" *Id.* at 792 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 1855 (1993) (emphasis in original)).

In the present case, the factual allegations specifically concerning Mike Todd that appear in the SAC consist—in their entirety—of the following:

> On information and belief, Defendant Mike Todd is an officer or manager of IRA Innovations, LLC and is a citizen and resident of Davidson County, Tennessee.

(Doc. No. 20 ¶ 15.)

> The persons or entities who acted as lenders in this enterprise or enterprises either as entities, listed lenders on the loan documents or owners/members, managers, or directors of the entities listed on the loan documents [include] Mike Todd . . . .

(*Id.* ¶ 50.)

> Mr. Gulas and Mr. Todd conspired with Lender Defendants in transactions in which IRA Innovations was a "Series Lender."

(*Id.* ¶ 57.)

The mere fact that Todd is an officer or manager of IRA Innovations may give rise to an inference that he was involved in the management of *IRA Innovations*, but it does not, standing alone, support a reasonable inference that he was involved in the alleged *RICO* enterprise. Moreover, the SAC does not contain a single concrete factual allegation regarding any "conduct" in which Mr. Todd engaged. The assertion that he "conspired in transactions in which IRA Innovations was a 'Series Lender'" is the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice" to state a colorable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because it does not allege any "conduct" by Todd in violation of § 1962(c), the SAC also fails to allege conduct on his part that would "objectively manifest[] an agreement to participate" in the affairs of the alleged RICO enterprise, for purposes of establishing his involvement in a RICO conspiracy under § 1962(d).

The court finds, in sum, that the SAC fails to contain factual allegations sufficient to state a colorable claim of any kind against Mike Todd. The Motion to Dismiss the claims against him

will be granted.

### B.     Claims Against IRA Innovations

#### 1.     *The Moving Defendants' Reliance on Documents Outside the Pleadings*

The moving defendants seek dismissal of the claims against IRA Innovations, primarily on the grounds that it is not a proper defendant as to any of the claims asserted against it, because it is a "nondiscretionary administrator of self-directed IRA Accounts." (Doc. No. 37, at 1.) It claims that, "[i]n a self-directed IRA account ('SDIRA'), the account holder exercises sole control of all investment decisions, and the administrator is bound to follow the accountholder's directions with respect to assets and investments in the accounts . . . ." (*Id.*) It argues that "[f]ederal courts across the country have recognized that only the accountholders of SDIRA accounts are the proper parties plaintiff or defendant regarding promissory notes or mortgages that are assets of a SDIRA account, not the administrator." (*Id.* at 3.) On the same basis, it asserts that the accountholders who directed it to invest funds in the loans identified by the plaintiff are the actual "lenders," rather than IRA Innovations, and, because it is not a "lender," it cannot be liable on any of the claims against it. It also asserts that the claims are not adequately pleaded. (*Id.*)

In support of its assertion that it is not a proper party defendant, IRA Innovations has filed, and relies upon, numerous documents submitted with its motion, including the Declaration of Mike Todd, as well as account applications and agreements between IRA Innovations and several individual clients or former clients of IRA Innovations, and documents identified in the docket as "Buy Direction Letters" and "Change of Address" forms. (Doc. Nos. 37-1 through 37-15.) It claims that, because "the correct identity of an alleged lender is central to Plaintiffs' claims," the court may properly review the "authenticated copies of IRA account agreements" and the other documents it submitted with its Motion to Dismiss. (Doc. No. 37, at 5.)

The court is not persuaded. As set forth above, if the court considers "matters outside the pleadings" that are presented in the context of a Rule 12(b)(6) motion, the court must treat the

motion as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The exception to this rule is narrow; the court may, without converting the motion into a Rule 56 motion, consider exhibits attached to a defendant's motion to dismiss if they are *both* "referred to in the Complaint" *and* "central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). IRA Innovations has not shown that the documents it presents are either. They clearly are not referred to in the SAC, and, while they may be central to IRA Innovations' defenses against the claims, they are not central to the plaintiffs' claims against IRA Innovations. The court may not consider these documents without converting the present motion into one for summary judgment, which the court declines to do at this juncture. The plaintiffs are entitled to conduct discovery prior to responding to IRA Innovations' factual allegations that fall outside the scope of the pleadings.

### 2. *Counts One and Five: Usury and Breach of Contract*

For the same reasons outlined above and relying on the documents the court declines to consider, the moving defendants assert that IRA Innovations is not a "lender" and therefore cannot be liable either for usury (Count One) or for breach of contract (Count Five), since it entered into the allegedly usurious promissory notes only on behalf of its accountholders. (Doc. No. 37, at 15–16, 20.) The SAC, however, clearly alleges that IRA Innovations is a "lender" for purposes of the usury claim in Count One and that it entered into contracts providing for the return of usurious interest, in Count Five. Insofar as IRA Innovations insists that it did not fund the loans from its own assets and therefore cannot be a "lender" for purposes of Tenn. Code Ann. § 47-14-101, the question of where the funds came from is a factual question that the court must resolve in favor of the plaintiffs at this juncture. The SAC alleges that IRA Innovations entered into promissory notes and, importantly, that it collected illegal interest pursuant to the terms of those notes. The plaintiffs argue now, as a legal matter, that IRA Innovations may be liable for these actions, irrespective of whether it was acting as an agent or a principal. The moving defendants do not answer this

argument, and the caselaw on which they rely is distinguishable.[2]

In short, IRA Innovations is not entitled to the dismissal of Count One or Count Five.

3.     *Count Three: Civil Conspiracy*

The moving defendants argue that Count Three, the state law civil conspiracy claim, must be dismissed because the plaintiffs have not alleged a predicate underlying tort. They argue that the usury claim in Count One, on which the conspiracy claim relies, "sounds in contract because the statutory claim arises under a statute that requires the existence of a contract." (Doc. No. 37, at 20 (citing Tenn. Code Ann. § 47-14-117).)[3]

The moving defendants are correct that a civil conspiracy claim "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020) (quoting *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007)). Conspiracy is actionable only if the underlying tort is actionable, *id.*, so there can be "no liability under a theory of civil conspiracy unless there is

---

[2] The so-called "fraudfeasor cases" cited by the moving defendants are cases in which SDIRA accountholders brought suit against the administrator or custodian of the SDIRA accounts, alleging that they are liable for failing to protect the accountholders from making investments in fraudulent schemes. In those cases, the holdings are typically premised upon the terms of the actual contract between the accountholders and the administrators. *See, e.g.*, *Lamm v. State Street Bank & Trust*, 749 F. 3d 938 (11th Cir. 2014) (affirming dismissal of fraud and related claims against the defendant SDIRA account administrator based largely on state law and the terms of the contractual arrangement between the plaintiff and the defendant); *accord, e.g.*, *Sams v. Entrust Ariz., LLC*, 591 F. App'x 229, 229–30 (4th Cir. 2015). In the present case, the plaintiff has not alleged or referred to those contracts, and they are not properly before the court.

In the so-called "lender cases" on which the moving defendants seek to rely, the courts recognize that individual account holders may bring suit against third parties in their own names, rather than rely on the account administrator to pursue rights on their behalf. *See, e.g. Sweet v. Taylor*, 4 F. Supp. 3d 1292 (M.D. Ala. 2014). This line of cases may eventually prove relevant, but the question of IRA Innovations' relationship with its account holders is a question that will have to be resolved after discovery.

[3] They also argue that the other claims do not qualify as "tort" claims. The court does not address these arguments, because the conspiracy claim in Count Three is clearly premised upon an alleged conspiracy to "collect usurious interest and excessive loan charges" (Doc. No. 20 ¶ 72) and not on the conduct that forms the basis for Counts Five and Seven (breach of contract and unjust enrichment).

underlying wrongful conduct." *Id.* (quoting *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)).

There are many cases, from a variety of jurisdictions (including one from a Tennessee federal district court), that presume that conspiracy to commit usury is an actionable claim. *See, e.g.*, *Heldt v. Payday Fin., LLC*, 12 F. Supp. 3d 1170, 1176 (D.S.D. 2014) ("The Plaintiffs make claims in the Amended Complaint against all Defendants for civil conspiracy and usury in violation of state laws."); *Terry v. Cmty. Bank of N. Va.*, 255 F. Supp. 2d 817, 824 (W.D. Tenn. 2003) (denying a motion to dismiss a claim for conspiracy to engage in usury and to violate the Tennessee Consumer Protection Act); *Jones v. Barco, Inc.*, 159 S.E.2d 279, 281 (S.C. 1968) (finding that the plaintiff's action for "to recover the statutory penalty for usury and to recover damages for the defendants' tortious conduct in conspiring to exact usurious charges from them" stated "an action at law"); *Rhee v. Dahan*, 454 N.Y.S.2d 371, 374 (N.Y. Sup. Ct. 1982) (finding that the complaint stated claims "cognizable under the laws of this state" for, among others, usury and "conspiracy to violate the usury laws," the latter of which "ultimately [would] succeed or fail at trial depending on a finding of whether there was a violation of the usury laws"); *Lee v. Marchetti*, 84 Cal. Rptr. 55, 58 (Cal. Ct. App. 1970) (finding that the plaintiff stated a claim for "conspiracy to evade the usury laws of this state"); *Allison v. Simmons*, 306 S.W.2d 206, 211 (Tex. Civ. App. 1957) (finding that the plaintiff pleaded "a conspiracy to charge usurious interest").

In none of these cases, however, was the court directly called upon to consider whether usury constitutes a tort that may support a conspiracy claim. Tennessee courts have not expressly addressed this matter either, but in *Harris v. Tindall*, 277 S.W.2d 374 (Tenn. 1955), a plaintiff brought suit for "damages for personal injuries alleged to have been caused the plaintiff as a direct and proximate result of the defendant's wilful, unlawful, and criminal act in exacting and collecting usury from the plaintiff." *Id.* at 375. The court characterized the suit as "a tort action brought to recover for personal injuries caused to the plaintiff as a result of the usurer's wrongful

and unlawful acts." *Id.* at 376. The case was dismissed on *res judicata* grounds, because the plaintiff had previously brought suit—and recovered damages—under the state's usury statute. *Id.* at 377. Justice Swepston, in a concurring opinion, had this to say about how a usury claim may be characterized:

> The extraction of usury is . . . a tort against the victim of usury. By its very nature it is a tort by which the usurer enriches his own estate at the expense of the victim. That being true, the common law gives the victim the right to waive the tort and sue in assumpsit. This common law right of action in the nature of assumpsit for money had and received is enacted into statute . . . , which allows the victim to recover the amount of the usury by suit.

> The victim in this case first brought his action under our statute and obtained a judgment for the amount of the usury. That was a waiver of the tort and instead thereof an action in assumpsit for the money had and received.

> . . . .

> The victim's cause of action was primarily an action in tort in which he could have recovered in one action all the damages suffered, but since he has waived the tort and brought his action in assumpsit on implied contract he has made an election of remedies and will be allowed to recover under such circumstances only to the extent that his estate has been diminished and the estate of usury has been increased by the wrongful act of the usurer.

> Stated differently, the law provided him the right to sue either in tort or in contract but not both, and since he has elected to sue in contract his action in tort is barred.

*Id.* at 681–82 (internal citations omitted).

The court construes this statement as an acknowledgement that usury is a cause of action that lies both in tort and in contract, and the current usury statute reinforces that conclusion. It provides that any contract that requires "on its face" the "payment of usury or excessive loan charges . . . shall not be enforceable," except that the original lender may sue to recover the principal actually advanced, plus lawful interest" and other lawful charges. Tenn. Code Ann. § 47-14-117(a). In other words, usurious interest provides a defense to the enforcement of what might otherwise be an enforceable contract. In addition, however, if the court finds a lender

> *guilty of unconscionable conduct* in a transaction by taking interest, loan charges [or other fees] in excess of the limitations fixed by statute, that lender . . . shall not be entitled to recover any interest [or] loan charges . . . with respect to that

transaction, and shall be required to refund to the borrower or debtor any loan charges . . . and twice the amount of interest collected with respect to that transaction, and the borrower shall be entitled to recover reasonable attorneys' fees from the lender.

*Id.* § 47-14-117(c)(1) (emphasis added). "Unconscionable conduct" is defined as "any calculated violation of statutory limitations on interest [or] loan charges . . . with full awareness of those limitations." *Id.* § 47-14-117(c)(2). The reference to "unconscionable conduct" reinforces the conclusion that a violation of the usury statute sounds in tort, as does the fact that the "willful collection of usury" remains a misdemeanor under Tennessee law. Tenn. Code Ann. § 47-14-112.

In this case, the plaintiffs allege violations of the state usury statute and unconscionable conduct, as well as a common design to engage in the collection of usurious interest and excessive loan charges. (Doc. No. 20 ¶¶ 59, 60, 72.) At this juncture, the court finds that the plaintiffs adequately allege an underlying tort that will support the conspiracy claim against IRA Innovations.

### 4. *RICO Claims: Counts Two and Four*

The moving defendants assert that the RICO and RICO conspiracy claims against IRA Innovations must be dismissed because the plaintiffs have not adequately alleged conduct by IRA Innovations, again because IRA Innovations did not "exercise[] discretion or control over the accountholders' assets. Rather, the accountholders made all investment decisions and directed IRA Innovations to distribute funds from their accounts to Plaintiffs, and received in return promissory notes and mortgages or deeds of trust." (Doc. No. 37, at 19 (citing Doc. Nos. 37-2 through 37-12, Doc. No. 37-15).) These, however, are factual allegations supported by reference to exhibits that the court declines to consider. Because the court cannot consider those documents without converting the motion into one for summary judgment, the moving defendants' argument for the dismissal of the RICO claim fails. Likewise, the court rejects their argument that the RICO conspiracy claim must be dismissed, which is premised only on the argument that the SAC fails to

state a RICO claim against IRA Innovators.

          5.      *Count Six: Breach of Fiduciary Duty*

Count Six is quite clearly asserted only against defendant Cain. The moving defendants, therefore, lack standing to seek its dismissal, and it is unclear why or on what basis they seek to challenge this claim.

          6.      *Count Seven: Unjust Enrichment*

IRA Innovations seeks dismissal of this claim, again, on the basis that it "engaged in no independent act" and acted only for the benefit of its accountholders. That argument fails in this context too. Moreover, the SAC alleges that IRA Innovations received a payment of $30,106.07 in proceeds from a real estate closing with respect to which it was not actually a lender in any capacity and, as a result, had no legitimate entitlement to those funds. The Settlement Statement attached to the SAC reflects that a payment was made to "IRA Innovations LLC," with no reference to a third-party accountholder. (Doc. No. 20-23, at 2.) Thus, even if IRA Innovations may ultimately establish that it is not a proper party with respect to the other claims against it, it is not entirely clear that the same argument would prevail with respect to this claim. The motion to dismiss this claim will also be denied.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant the moving defendants' motion, insofar as it seeks the dismissal of all claims asserted against Mike Todd, but deny it to the extent it seeks dismissal of the claims against IRA Innovations.

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge